2023 IL App (1st) 221376

No. 1-22-1376

Opinion filed September 13, 2023

Third Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| MONTELL GRIFFIN, HERNAN MOSQUERA, and JACQUELINE MEYER, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| | ) | No. 19 CH 9988 |
| v. | ) ) | |
| | ) | Honorable |
| COOK COUNTY; THOMAS J. DART, Sheriff of Cook County; and THE COOK COUNTY SHERIFF'S MERIT BOARD, | ) ) ) | Alison C. Conlon, Judge, presiding. |
| Defendants-Appellees. | ) | |

_____

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Martin concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiffs argue that they made a timely challenge to the illegal composition of the Cook County Sheriff's Merit Board (Merit Board), and, thus, their complaint in the Circuit Court of Cook County raising the same allegation was not barred by the *de facto* officer doctrine. In the alternative, they claim that the trial court erred by denying them leave to file an amended complaint.

¶ 2        For the reasons that follow, we affirm the judgment of the trial court.[1]

¶ 3                                    I. BACKGROUND

¶ 4        On February 3, 2016, the Cook County Sheriff's Office (Sheriff) filed a complaint against

plaintiffs Hernan Mosquera and Jacqueline Myers, Correctional Officers, with the Merit Board.

The complaint alleged that, on May 27, 2014, Mosquera and Myers witnessed the use of excessive

force against a detainee, failed to intervene, failed to notify a supervisor, failed to file the proper

written reports, and provided false statements regarding the incident.

¶ 5        On August 29, 2016, the Sheriff filed a complaint with the Merit Board against plaintiff

Montell Griffin, a Correctional Officer, alleging that on April 24, 2015, Griffin used excessive

force against a detainee and provided false reports and false statements regarding the incident.

¶ 6        The administrative hearings for Mosquera and Myers began on May 22, 2017; continued

on May 23, 2017, and on July 6, 2017; and concluded on September 14, 2017. The hearing for

Griffin took place on September 22, 2017.

¶ 7        On November 27, 2017, after their hearings had concluded and all the evidence against

them was presented, plaintiffs filed a complaint in the Circuit Court of Cook County against the

Sheriff in *Griffin v. Dart*. This complaint does not appear to be contained in the record on appeal.

On May 9, 2018, plaintiffs voluntarily dismissed that complaint and never refiled it.

¶ 8        On May 30, 2018, plaintiffs filed suit in the United States District Court for the Northern

District of Illinois, seeking equitable relief and alleging that the illegal composition of the Merit

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

Board violated plaintiffs' due process rights. The complaint was later dismissed with prejudice on September 2, 2020.

¶ 9 In addition to filing lawsuits, plaintiffs all raised the issue of the illegally constituted Merit Board in documents filed with the Merit Board itself. On February 14, 2019, Mosquera filed a document titled, "Respondent's Opposition to the Motion," which contained allegations such as, "Respondents' [*sic*] prior hearing was conveyed by a usurper. It is null and void," and "Respondent has been deprived of property and due process rights in excess of the authority permitted to the Sheriff and the Merit Board." On April 10, 2019, Mosquera filed a document with the Merit Board, titled "Respondent's Proposed Findings of Fact." In it, she alleged that the hearing was "convened during the Merit Board's Period of Impotence." Myers filed documents identical to those filed by Mosquera on February 14, 2019, and April 10, 2019. On September 19, 2018, Griffin filed with the Merit Board a motion to dismiss, which claimed, among other things, that the Merit Board was illegally constituted.

¶ 10 On July 8, 2019, the Merit Board ordered the firing of Griffin, effective August 29, 2016. Two days later, on July 10, 2019, the Merit Board ordered the firing of Mosquera and Myers, effective February 3, 2016.

¶ 11 On August 28, 2019, plaintiffs filed a "Petition for Declaratory Judgment and Administrative Review," in the Circuit Court of Cook County. Count I of the pleading sought declaratory judgment that the Sheriff's suspension of their employment beyond 30 days was illegal, null, and void and that plaintiffs were entitled to reinstatement and back pay. Count II sought review of the Merit Board's decisions, claiming that the decisions to terminate plaintiffs'

employment were against the manifest weight of the evidence and that the findings did not warrant termination.

¶ 12 Defendants filed a motion to dismiss on November 4, 2019. That motion asserted that the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2018)) barred plaintiffs' claims and that, alternatively, plaintiffs' claims were untimely.

¶ 13 On August 14, 2020, the trial court granted defendants' motion to dismiss as to Count II, holding that plaintiffs' complaint was not filed within 35 days of the Merit Board's decisions, as required by section 3-103 of the Administrative Review Law (735 ILCS 5/3-103 (West 2018)). The trial court did not rule on defendants' motion as to Count I, noting that the question of whether a Merit Board decision is void because the Merit Board was invalidly constituted was pending before the Illinois Supreme Court. On October 22, 2020, the supreme court decided *Goral v. Dart*, 2020 IL 125085.

¶ 14 Following the supreme court's decision in *Goral*, plaintiffs subsequently filed a motion for leave to file a first amended complaint for declaratory, injunctive, and equitable relief. That complaint reiterated the argument that the Merit Board was unlawfully constituted and that the orders terminating plaintiffs' employment were void.

¶ 15 On December 15, 2021, the trial court denied plaintiffs' motion for leave to file the amended complaint, holding that plaintiffs' claim regarding the composition of the Merit Board was barred because they did not make a timely challenge to that composition.

¶ 16 Plaintiffs filed a renewed motion for leave to file a first amended complaint on March 21, 2022, renewing the claim that the Merit Board was illegally constituted and, therefore, the decisions terminating plaintiffs' employment were void.

¶ 17    The trial court denied the renewed motion for leave to file a first amended complaint on September 7, 2022, on the grounds that plaintiffs failed to state a claim and did not make timely challenges to the Merit Board's appointments before it took substantive action. During arguments on this motion, defendants also asked the trial court to reconsider its August 14, 2020, order, which left Count I of plaintiffs' original petition intact. The trial court granted defendants' motion to dismiss Count I with prejudice for the same reasons. This appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19    Plaintiffs appeal the denial of their renewed motion for leave to file an amended complaint, as well as the trial court's order dismissing Count I of the original complaint. As explained below, the timeliness of plaintiffs' challenges to the Merit Board's authority govern both of these issues.

¶ 20                               A. Statutory Overview

¶ 21    Although the Sheriff has the authority to suspend a Sheriff's officer for any reasonable amount of time not to exceed 30 days, the Merit Board has the exclusive authority to remove, demote, suspend in excess of 30 days, or terminate a Sheriff's officer for violating the Sheriff's rules, regulations, or code of conduct. *Id.* ¶¶ 31-32; 55 ILCS 5/3-7011, 3-7012 (West 2018).

¶ 22    Administrative agencies are created solely by statute, and thus have no general or common law powers. *Goral*, 2020 IL 125085, ¶ 33. An administrative agency's powers are limited to those granted by the legislature. Any action taken by an agency must be authorized by its enabling act. *Id.*

¶ 23    The Illinois Constitution grants circuit courts the jurisdiction to review administrative decisions as provided by law. Ill. Const. 1970, art. VI, § 9. The Administrative Review Law "shall apply to and govern every action to review judicially a final decision of any administrative agency

where the Act creating or conferring power on such agency, by express reference, adopts the provisions of *** the Administrative Review Act." 735 ILCS 5/3-102 (West 2018). Where it is adopted, the Administrative Review Law bars any other statutory, equitable, or common-law mode of review of decisions of administrative agencies. *Goral*, 2020 IL 125085, ¶ 34. The Administrative Review Law applies to and governs proceedings for review of the Merit Board. 55 ILCS 5/3-7012 (West 2018).

¶ 24                    B. The Backdrop of *Taylor v. Dart* and *Goral v. Dart*

¶ 25    On September 23, 2016, this Court issued its first opinion in *Taylor v. Dart*, 2016 IL App (1st) 143684 (vacated by *Taylor v. Dart*, No. 121507 (Ill. Jan. 25, 2017) (supervisory order)). On May 5, 2011, the Sheriff requested approval from the Cook County Board of Commissioners to appoint John R. Rosales to the Merit Board to fill a vacancy, the term of which was set to expire on March 19, 2012. *Taylor*, 2016 IL App (1st) 143684, ¶ 6. Rosales's appointment was approved on June 1, 2011. *Id.* After the expiration of that term on March 19, 2012, the Sheriff did not reappoint Rosales to the Merit Board, but he continued to serve. *Id.*

¶ 26    The Sheriff subsequently filed a complaint against Taylor, seeking to terminate his employment as a Sheriff's officer. *Id.* ¶ 7. Rosales presided over the hearing on February 27, 2013, and signed the order terminating Taylor's employment on October 30, 2013. *Id.* Taylor subsequently sought administrative review in the circuit court, which affirmed the Merit Board's decision. *Id.* ¶ 8. Taylor moved for reconsideration, arguing that the appointment of Rosales was invalid because he was not appointed to a six-year term, as required by section 3-7002 of the Counties Code (55 ILCS 5/3-7002 (West 2012)). *Taylor*, 2016 IL App (1st) 143684, ¶ 8. That

motion was granted with the circuit court finding that the Merit Board was not lawfully constituted at the time it rendered its decision. *Id.* ¶ 9.

¶ 27 On appeal, this court held that section 3-7002 did not authorize the Sheriff to appoint an individual to the Merit Board for less than a six-year term. *Id.* ¶ 36. We further held that the Merit Board's decision terminating Taylor was void because the defect with Rosales's appointment meant that the Merit Board was illegally constituted at the time of the decision to terminate the plaintiff's employment. *Id.* ¶¶ 38-47.

¶ 28 Our supreme court entered a supervisory order on January 25, 2017, directing this court to vacate its opinion and consider an issue it had declined to address regarding Cook County's home rule authority. *Taylor*, No. 121507 (Ill. Jan. 25, 2017) (supervisory order).

¶ 29 On remand, this court considered the question of whether the Cook County Board of Commissioners had home rule authority to approve interim appointments to the Merit Board. *Taylor v. Dart*, 2017 IL App (1st) 143684-B, ¶ 48 (superseded by statute). This Court concluded that, because administrative agencies have no general or common-law powers and no statutory provision provided for interim appointments, the Cook County Board had no home rule authority to approve the interim appointment of Rosales to the Merit Board. *Id.* ¶ 53.

¶ 30 Effective December 8, 2017, the General Assembly amended section 3-7002 of the Counties Code. Pub. Act 100-562, § 5 (eff. Dec. 8, 2017) (amending 55 ILCS 5/3-7002). That amendment (1) permitted the Sheriff to make interim appointments to the Merit Board, (2) abolished all existing terms of each member of the Merit Board, and (3) created a new schedule for staggered terms of Merit Board members. *Id.*; *Goral*, 2020 IL 125085, ¶ 12. The Sheriff

subsequently appointed a new Merit Board, which included six of the seven previous members. *Goral*, 2020 IL 125085, ¶ 13.

¶ 31 On October 22, 2020, our supreme court decided *Goral*. There, the Sheriff filed complaints against the plaintiffs between September 16, 2016, and July 20, 2017. *Id.* ¶¶ 4-9. While those complaints were pending, the plaintiffs raised challenges to the Merit Board's composition, which the Merit Board declined to address. *Id.* ¶ 10. On November 27, 2017, the plaintiffs filed suit against the Sheriff, challenging the legality of the Merit Board's composition. *Id.* ¶ 11. After the legislature amended section 3-7002, the Sheriff filed amended complaints that restated the same charges. *Id.* ¶ 14. On February 26, 2018, the plaintiffs amended their own complaints, challenging not only the previous composition of the Merit Board, but the composition of the post-amendment Merit Board. *Id.* ¶ 15. On July 26, 2018, the circuit court dismissed the plaintiffs' suit on the basis that plaintiffs were required to exhaust their administrative remedies before seeking relief outside the context of administrative review. *Id.* ¶ 17.

¶ 32 The supreme court reversed the circuit court's judgment, holding that the plaintiffs' suit was not barred by the exhaustion doctrine. *Id.* ¶¶ 44-55. Additionally, of import to the case at bar, the supreme court held that the *de facto* officer doctrine does not apply to the decisions of the Merit Board when an individual has made a timely challenge to the Merit Board's composition before the Merit Board takes substantive action in the case. *Id.* ¶¶ 70-76.

¶ 33                                    C. The *De Facto* Officer Doctrine

¶ 34 Plaintiffs' first claim is that the trial court erred in dismissing Count I of the August 28, 2019, petition because they raised a timely challenge to the composition of the Merit Board. The Defendants respond that the *de facto* officer doctrine precluded the trial court's review of this issue

because plaintiffs failed to raise this issue before the Merit Board took substantive action. We review dismissals pursuant to section 2-619 of the Code of Civil Procedure *de novo*. *Id.* ¶ 27.

¶ 35 The *de facto* officer doctrine is a common law equitable doctrine that confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment to office is deficient. *Id.* ¶ 71 (citing *Ryder v. United States*, 515 U.S. 177, 180 (1995)). Under the doctrine, the acts of a person actually performing the duties of an office under color of title are valid so far as the public or third parties who have an interest in them are concerned. *Id.* (citing *People ex rel. Chillicothe Township v. Board of Review of Peoria County*, 19 Ill. 2d 424, 426 (1960)). The doctrine serves as a means to avoid the chaos that would result from multiple repetitious suits challenging every action taken by every official whose claim to office could be open to question. *Id.* (*citing Ryder*, 515 U.S. at 180). The doctrine thus serves to protect the public by ensuring the orderly functioning of the government, despite the existence of technical defects in title to office. *Id.*

¶ 36 However, the *de facto* officer doctrine is applied as a defense to an attack on the acts of an officer or appointee in a collateral proceeding once some official act or decision has been rendered. *Id.* ¶ 72. The doctrine is not meant to preclude a timely challenge to agency authority and embraces the notion that, before being subjected to an administrative proceeding, a party should have some avenue to timely question and verify that the agency has the authority to act. *Id.* ¶ 73. As long as the person making a challenge does so before the administrative body has taken substantive action, the *de facto* officer doctrine does not bar that challenge. *Id.* ¶¶ 74-75.

¶ 37 Plaintiffs' claim presents us with the conundrum of determining what constitutes "substantive action." Plaintiffs assert that substantive action is something akin to a final order or

judgment, while defendants assert that even the act of ruling on evidentiary objections at plaintiffs'

termination hearings constitutes substantive action. Of recent cases involving the Merit Board and

the *de facto* officer doctrine, this case appears unique in that plaintiffs objected to the composition

of the Merit Board after the hearings were commenced and completed, but before final decisions

was rendered. In *Goral*, the plaintiffs challenged the Merit Board's composition before their

disciplinary hearings took place. *Id.* ¶¶ 10, 15-16. There have also been a number of cases where

the plaintiffs did not challenge the Merit Board's decision until after the Merit Board had rendered

a decision. See, *e.g.*, *Mireles v. Dart*, 2023 IL App (1st) 221090, ¶¶ 2-3, 6; *Malacina v. Cook

County Sheriff's Merit Board*, 2021 IL App (1st) 191893, ¶¶ 1-2; *Cruz v. Dart*, 2019 IL App (1st)

170915, ¶¶ 21, 23, 28; *Pietryla v. Dart*, 2019 IL App (1st) 182143, ¶¶ 3-4; *Lopez v. Dart*, 2018 IL

App (1st) 170733, ¶¶ 8, 38-39.

¶ 38    Although *Goral* invoked the concept that a challenge to the Merit Board's composition

must be raised before the Merit Board takes substantive action, it neither explicitly defined this

term nor cited any cases that defined that standard. *Goral*, 2020 IL 125085, ¶¶ 71-75. However,

some language in *Goral* and other cases provides some guidance.

¶ 39    In *Goral*, when the supreme court observed that the Merit Board had not taken any

substantive action prior to the plaintiffs' lawsuit, it stated that "[p]laintiffs were not trying to

unwind or undermine any administrative determination by the Merit Board. At the time plaintiffs

filed both their original and second amended complaints, there had been no action or judgment by

the Merit Board in plaintiffs' proceedings to which the doctrine could confer validity." *Id.* ¶ 75.

*Goral* thus referenced both "trying to unwind" an administrative determination, but also discussed

"action or judgment" disjunctively as if they are distinct. *Id.* Furthermore, *Goral* also stated that

"our precedent embraces the notion that, before being subjected to an administrative proceeding, a party should have some avenue to timely question and verify that the agency has authority to act. *Id.* ¶ 73. "[B]efore being subjected to an administrative proceeding" suggests that objections must be made sooner than simply before a decision is rendered. *Id.*

¶ 40    When this Court was confronted with the *de facto* officer doctrine in *Malacina v. Cook County Sheriff's Board*, we noted that, "[T]he Board's then-illegal composition remained ripe for a challenge by a party before the Board——*as long as the party raised it at the time of those administrative proceedings*, and not merely afterward, post-final decision." (Emphasis in original.) *Malacina*, 2021 IL App (1st) 191893, ¶ 31. Discussing *Goral*, we wrote, "Goral did so, objecting in the administrative proceeding itself on this ground and likewise filing a separate lawsuit—all *before* the Board's final administrative decision was rendered." (Emphasis in original.) *Id. Malacina* also explained that "if a litigant were to challenge the qualifications of the Board in a *timely* fashion—not after-the-fact but during the proceedings themselves—the law would supply that litigant a remedy. *Id.* ¶ 30.

¶ 41    But as we have explained, neither *Goral* nor *Malacina* were confronted with the factual circumstances of this case. The disciplinary hearings for plaintiffs Mosquera and Myers commenced in May of 2017 and completed by September of 2017, while plaintiff Griffin's hearing commenced and completed in September of 2017. Approximately two months after those hearings were completed, plaintiffs filed suit in the Circuit Court of Cook County on November 27, 2017, in *Griffin v. Dart*, 2017-CH-15622. They abandoned that challenge on May 9, 2018. Then, on May 30, 2018, approximately 10 months after their Merit Board disciplinary hearings concluded, they filed suit in the United States District Court for the Northern District of Illinois, which was

dismissed with prejudice on September 2, 2020. See *Griffin v. Cook County*, No. 18-cv-03792, 2020 WL 5253846 (N.D. Ill. Sept. 9, 2020). Thus, *Goral* and *Malacina* contemplated the meaning of substantive action in very different circumstances.

¶ 42    Having now been confronted with the circumstances of this case, we conclude that substantive action can be something less than a final administrative decision. Defendant emphasizes the fact that the Merit Board ruled on evidentiary objections during the hearings, which is not without its significance, but we think commencing a hearing generally and allowing both sides to present all of the evidence is the more significant factor here that constitutes substantive action sufficient to trigger the *de facto* officer doctrine.

¶ 43    The *de facto* officer doctrine "confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment to office is deficient." *Goral*, 2020 IL 125085, ¶ 71 (citing *Ryder* 515 U.S. at 180). The emphasis on "acts" and "acting" persuades us that substantive action does not mean only final decisions or orders. Moreover, to reason otherwise would defeat the doctrine's purpose, which is to ensure the orderly functioning of the government, despite technical defects in the office. *Id.*

¶ 44    It would be illogical, chaotic, and wasteful if litigants could, without objection, submit to the Merit Board's authority insofar as its ability to commence a hearing, place witnesses under oath, hear evidence and arguments, and rule on evidentiary objections and then challenge the Merit Board's authority only once they have had an opportunity to see which way the winds were blowing.

¶ 45    This reasoning is not without precedent in other areas of our legal system. For example, the Code of Civil Procedure permits substitution of a judge as a matter of right so long as the

request is made "before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case." 735 ILCS 5/2-1001(a)(2)(ii) (West 2018). The request to substitute a judge must be brought at the earliest practical moment to prohibit a litigant from seeking a substitution only after he or she is able to discern the judge's position. *In re Estate of Gay*, 353 Ill. App. 3d 341, 343 (2004). A request to substitute a judge thus may be untimely even if made after a pretrial conference at which substantive issues were discussed but not decided. *Id.*

¶ 46    Admittedly, a request to substitute a judge is not the same as challenging the legal authority of an administrative agency to adjudicate an issue, and the latter does not implicate the same forum shopping concerns as the former because there is no other forum for which litigants might shop. However, a request to substitute a judge does create comparable concerns about submitting to the Merit Board's authority only when litigants believe the hearing is going in their favor. If we were to hold that substantive action is only a final decision by the Merit Board, litigants could proceed with a hearing with an illegally constituted board and observe how the evidence unfolds. If the hearing went favorably, they could acquiesce to the Merit Board's authority, await a decision, and allow the *de facto* officer doctrine to trigger and confer authority upon the agency's decision. If the hearing did not go favorably, they could challenge the Merit Board's authority post-hearing, but prior to a decision, which would give rise to administrative review in the circuit court and further appeals. That is a sort of cynical gamesmanship that we should not encourage.

¶ 47    The first of the hearings in this case commenced approximately eight months after *Taylor,* 2016 IL App (1st) 143684, which acknowledged defects in the Merit Board's constitution. In spite of that decision, plaintiffs appeared for their disciplinary hearings represented by counsel, cross-examined witnesses, testified in their own defense, offered exhibits into evidence, and offered

arguments on the evidence, all without challenging the Merit Board's authority. They did not object for the first time until the end of November 2017, and that lawsuit was abandoned. We hold that commencing and completing the disciplinary hearings for each plaintiff constitutes substantive action. Allowing a challenge to the Merit Board's legal authority after the Merit Board has already commenced and completed a hearing would be antithetical to the very purpose of the *de facto* officer doctrine, which is to ensure the orderly functioning of government. *Goral*, 2020 IL 125085, ¶ 71.

¶ 48      Accordingly, the trial court did not err in finding Count I of plaintiffs' August 28, 2019, complaint to be barred by the *de facto* officer doctrine because they did not challenge the Merit Board's authority before the Merit Board took substantive action in their cases.

¶ 49                     D. The Amended Complaint and the *Loyola* Factors

¶ 50      Plaintiffs alternatively argue that the trial court erred in denying their renewed motion for leave to file an amended complaint. Whether the trial court erred in ruling on a motion to amend pleadings is within the discretion of the trial court, and we will not reverse absent an abuse of that discretion. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273-74 (1992).

¶ 51      We use four factors to determine whether the trial court abused its discretion: (1) whether the proposed amendment would cure the defective pleading, (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment, (3) whether the proposed amendment is timely, and (4) whether previous opportunities to amend the pleading could be identified. *Id.* at 273.

¶ 52      "But we may begin and end our analysis with the observation that it is never an abuse of discretion to deny leave to amend when the proposed amendment would be futile." *Malacina*, 2021

IL App (1st) 191893, ¶ 40. As we described above, plaintiffs did not challenge the Merit Board's legal authority before the Merit Board took substantive action. Count I of the plaintiffs' August 28, 2019, complaint was dismissed because plaintiffs failed to make a timely challenge to the Merit Board's authority. No subsequent amendment could possibly cure that defect because the *de facto* officer doctrine permanently barred challenge to the Merit Board's authority.

¶ 53    Accordingly, the trial court did not abuse its discretion in denying plaintiffs' renewed motion for leave to amend their complaint.

¶ 54                                  III. CONCLUSION

¶ 55    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 56    Affirmed.

*Griffin v. Cook County*, **2023 IL App (1st) 221376**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CH-9988; the Hon. Alison C. Conlon, Judge, presiding. |
| **Attorneys for Appellant:** | Cass T. Casper, of Disparti Law Group, P.A., of Chicago, for appellants. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Cathy McNeil Stein, Jonathon D. Byrer, and Kathleen C. Ori, Assistant State's Attorneys, of counsel), for appellee Thomas J. Dart.<br><br>No brief filed for other appellees. |