2024 IL App (1st) 230365-U
Order filed: March 29, 2024

FIRST DISTRICT
FOURTH DIVISION

No. 1-23-0365

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THOMAS J. DART, Sheriff of Cook County, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Defendant-Appellant, | ) ) | |
| v. | ) ) | No. 2019 CH 7900 |
| JOSEPH FABIAN, | ) ) ) | Honorable Neil H. Cohen, |
| Plaintiff-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Martin concurred in the judgment.

**ORDER**

¶ 1   *Held*:  On administrative review, we reversed the circuit court's judgment that found the Merit Board lacked jurisdiction to consider disciplinary proceedings against plaintiff and remanded to the circuit court for further proceedings.

¶ 2   Defendant Thomas J. Dart, Sheriff of Cook County (Sheriff), filed a disciplinary complaint with the Sheriff's Merit Board (Merit Board) against plaintiff, Joseph Fabian, a correctional officer, for allegedly using excessive force against a detainee and filing a false report and making an inaccurate statement about the incident to investigators. The Merit Board sustained the

disciplinary complaint and discharged plaintiff. On administrative review, the circuit court found that the discharge decision was void because the Merit Board was not lawfully constituted when it conducted the evidentiary hearing on defendant's complaint against plaintiff. For the reasons that follow, we reverse the circuit court's judgment and remand this matter to the circuit court for further proceedings consistent with this order.

¶ 3    In his disciplinary complaint filed on March 16, 2015, defendant alleged that while on duty at the Cook County jail hospital on December 12, 2012, plaintiff "used excessive force against detainee Earl Ross by kicking [him] in the head area while [he] lay on the bed, handcuffed, shackled and under the effects of medication." Also, plaintiff submitted a use of force report that same day in which he failed to document that he used excessive force. Plaintiff subsequently was interviewed by investigators from the Sheriff's Office of Professional Review (OPR) during which he reviewed a videotape of the incident. Plaintiff falsely stated that he never kicked Ross and that from the video, it looked like his foot slipped off the bed.

¶ 4    Defendant alleged that plaintiff's actions violated Sheriff's order 11.2.1.0 (use of force policy), Sheriff's order 11.2.2.0 (use of force reporting procedures), general order 3.8 (ethics and standards of conduct policy), general order 4.1 (internal investigations policy), general order 24.9.1.0 (reporting incidents policy), Sheriff's order 11.2.20.0 (rules of conduct), and article X, paragraph B of the Merit Board's rules and regulations (prohibiting a correctional officer from violating the Sheriff's general orders, special orders, directives or rules and regulations). Based on these alleged violations, defendant requested that the Merit Board remove plaintiff from his position as a correctional officer.

¶ 5    On September 23, 2016, while plaintiff's case was pending before the Merit Board, we issued our first opinion in *Taylor v. Dart* (*Taylor I*), 2016 IL App (1st) 143684, holding that a

disciplinary decision entered by the Merit Board against Sheriff's employee Percy Taylor in 2013 was void because one of the Merit Board members had been improperly appointed to a term of less than six years in violation of section 3-7002 of the Counties Code then in effect (55 ILCS 5/3-7002 (West 2012)). *Taylor I*, 2016 IL App (1st) 143684, ¶¶ 38-47.

¶ 6    On January 25, 2017, our supreme court entered a supervisory order in *Taylor I*, directing us to vacate a portion of our decision that had declined to address an issue regarding Cook County's home rule authority. *Taylor*, No. 121507 (Ill. Jan. 25, 2017) (supervisory order). The supreme court did not vacate our holding that the Merit Board's composition was illegal under section 3-7002 then in effect.

¶ 7    On March 28, 2017, the Merit Board conducted an evidentiary hearing on the disciplinary charges against plaintiff in the instant case. Similar to *Taylor I*, three members of the Merit Board had been appointed to terms of less than six years in violation of section 3-7002 then in effect. However, plaintiff did not object to the Merit Board's authority to hear the case.

¶ 8    The video of the incident was played at the hearing and is contained in the record on appeal. The video initially depicts Ross being brought into a room in the hospital and given a shot. The video later depicts plaintiff, Gregory Cobbs (a physical therapy student), and Officer Juan Hernandez approach Ross's room. They tell him to remove his shoes. Immediately, Ross begins to physically struggle with the three of them. Eventually, they push Ross face-down on the bed and handcuff his hands behind his back. Ross stops resisting. Blood can be seen on the bed near his head.

¶ 9    Hernandez leaves the room. Plaintiff steps his left foot on the bed next to Ross's head and shoulder. Plaintiff puts his hands on Ross's back and leans over Ross's upper torso. Cobbs stands at the foot of the bed with his left leg draped over Ross's legs.

¶ 10    The camera pulls back. At this angle, Cobbs's position at the foot of the bed blocks the view of Ross's head and shoulders.

¶ 11    Sergeant Conley walks in and hands a white towel to Cobbs, who gives it to plaintiff. Plaintiff begins to roll the towel up while keeping his left foot on the bed near Ross's head and shoulder. Plaintiff leans over Ross and appears to pull Ross toward him. Plaintiff's left foot suddenly kicks in the direction of Ross's head/shoulder, making a thump sound. We cannot see the actual point of impact because our view of Ross's head and shoulder continues to be blocked by Cobbs. Ross's torso jerks upward in response to the kick.

¶ 12    Plaintiff, Cobbs, and another officer carry Ross to a different room and place him face-up on a bed. There is no visible injury to Ross's face. A nurse enters the room and administers a shot to Ross. The video ends.

¶ 13    Defendant called James Hart, a jail management consultant from Tennessee, to provide expert testimony as to whether plaintiff violated the Sheriff's use of force policy. Hart viewed the videotape and testified that at approximately the 5:45 mark in the video, "it appears that [plaintiff] with his left foot kicked at [Ross] in the vicinity of his shoulder/head area." Hart also heard a sound in the videotape consistent with plaintiff's foot or boot "striking something." Hart testified that at the time of the kick, Ross was a cooperative subject and there was no need for use of force. By kicking Ross and failing to properly document it, plaintiff violated Sheriff's orders 11.2.1.1 and 11.2.2.0.

¶ 14    On cross-examination, Hart testified that he had never met or spoken with plaintiff, Cobbs, or Ross, nor with any of the medical staff on duty at the hospital on December 12, 2012. Hart reiterated that the videotape depicted plaintiff kicking Ross in the head or shoulder at about the 5:45 mark. Hart based this opinion on "the noise that was made *** as [plaintiff's] foot came

forward as well as the slight movement of [Ross's] upper torso, [which] would be consistent with being pushed or moved or kicked." When asked whether the noise he heard in the videotape could have come from plaintiff kicking the bed, Hart testified no:

> "It appeared that the bed was a mattress that [Ross] was on, which would have been a *** softer type of thing. *** [T]he noise that was made, sounded more of a *** solid kind of contact or a solid item that the leg connected with."

¶ 15    On redirect examination, Hart further testified:

> "At the point in time that [plaintiff] kicked at [Ross], there was a distinct thud *** as a sound that a contact was made with the officer's boot to *** something solid; there was a movement of [Ross's] upper torso, *** which would indicate that there was some kind of contact, some kind of pushing, some kind of impact at that point in time."

¶ 16    Plaintiff testified that he did not kick Ross anywhere on his body on December 12, 2012. Plaintiff explained that Ross was in the psychiatric unit of the hospital and had a history of violence. While restraining Ross on December 12, plaintiff was concerned because Ross was making hocking noises indicating that he was about to spit. Plaintiff testified:

> "At the time, spit masks weren't really available to us so towels were used to cover detainees' mouths for spitting purposes. At the time, as I was putting the towel around by his mouth, I readjusted my foot and then used my other leg to gain control underneath the bed to get more grip and then put the towel on him so this way I wouldn't lose grip and my foot was on the bed, on the sheet, and then my foot gets tangled up on the sheet and that's how I moved my foot."

¶ 17    When asked about the "thud" sound in the video, plaintiff testified: "At the bottom of the bed it's *** wood, and usually when we go into those units, that's kind of our control, to put our foot underneath that bed so this way we get more leverage to use against the detainee."

¶ 18    Plaintiff testified that at the time of the incident, he had been working in the jail hospital for six years and had never been accused of excessive force. Following the incident, plaintiff filled out a resistance/use of force form. Plaintiff did not indicate on the form that he kicked Ross "because no kick took place."

¶ 19    Gregory Cobbs testified that on December 12, 2012, he was studying to be a physical therapist while working in the Sheriff's office. Ross was suspected of having contraband in his shoes that day, so Cobbs, plaintiff and Officer Hernandez entered his room to retrieve his shoes. Upon their entering the room, Ross punched Cobbs in the jaw. The officers moved to restrain Ross.

¶ 20    Cobbs testified that he never saw plaintiff kick Ross. Cobbs viewed the videotape and was asked about plaintiff's movement of his left foot at about the 5:45 mark. Cobbs testified that the video depicted plaintiff "moving forward" because Ross was fighting and resisting him.

¶ 21    Cobbs reiterated that plaintiff did not kick Ross. Ross never complained about being kicked, nor did he have any visible injuries to his shoulder, head, or neck.

¶ 22    Augustus Alabi testified that he is a registered nurse who was working at the jail hospital on December 12, 2012. After plaintiff and Cobbs gained control over Ross, Alabi was instructed by the attending physician to secure Ross to the bed with leather restraints and to administer medication to him. Alabi subsequently examined Ross and observed no signs of any injuries. Alabi also testified that in the four to five years he worked with plaintiff, he never witnessed plaintiff use excessive force or received any complaints from detainees that plaintiff had used excessive force.

¶ 23    Plaintiff introduced into evidence nine letters attesting to his good character and professionalism from medical professionals who worked with him at the jail hospital.

¶ 24    Following the hearing, the Merit Board took the case under advisement. On May 12, 2017, while the case was under advisement, we issued our second decision in *Taylor v. Dart* (*Taylor II*), 2017 IL App (1st) 143684-B. The holding was the same: the interim appointment of the Merit Board member to a term of less than six years violated section 3-7002 of the Counties Code then in effect, thereby rendering its disciplinary decision against Taylor void. *Id.* ¶¶ 37, 46. In so holding, we noted that when "an administrative body acts outside of its specific statutory authority, it acts without jurisdiction, and its actions are void and a nullity from their inception." *Id.* ¶ 18.

¶ 25    In response to *Taylor I* and *Taylor II*, the General Assembly amended section 3-7002 of the Counties Code effective December 8, 2017. See Pub. Act 100-562, § 5 (eff. Dec. 8, 2017) (amending 55 ILCS 5/3-7002). That amendment worked three changes: (1) it permitted the Sheriff to make interim appointments to the Merit Board, (2) it abolished all existing terms of each member of the Merit Board, and (3) it created a new schedule for staggering terms of Merit Board members.

¶ 26    On December 13, 2017, the Sheriff appointed a new Merit Board, which included six of the seven previous members.

¶ 27    On December 18, 2017, plaintiff filed a motion to dismiss the charges against him. Plaintiff argued that at the time the complaint was filed and the hearing was held, three of the Merit Board members had been appointed to terms of less than six years and there were only five members total in violation of section 3-7002 of the Counties Code then in effect. Citing *Taylor II*, plaintiff argued that the Merit Board's illegal composition rendered it without jurisdiction over this matter, necessitating dismissal.

¶ 28    The Merit Board never issued a formal ruling on plaintiff's motion to dismiss. Instead, it ordered that a second evidentiary hearing be conducted, but subsequently reversed itself and directed the parties to submit their proposed findings of fact by March 28, 2019.

¶ 29    Meanwhile, on August 17, 2018, the General Assembly amended section 3-7012 of the Counties Code to provide that the Merit Board "shall render its decision [on disciplinary charges] no later than 120 days following the conclusion of any hearings conducted under this Section." See Pub. Act 100-912, § 5 (eff. Aug. 17, 2018) (amending 55 ILCS 5/3-7012). Although more than 120 days had passed since the conclusion of the hearing conducted on the disciplinary charges brought against plaintiff, he did not raise any argument or file any motion with the Merit Board seeking dismissal based on the violation of amended section 3-7012.

¶ 30    On June 27, 2019, the Merit Board entered its final judgment finding that plaintiff used excessive force against Ross, failed to completely and accurately report such use of force, and lied to the OPR regarding the use of force. The Merit Board concluded that plaintiff thereby violated Sheriff's orders 11.2.1.0, 11.2.2.0, and 11.2.20.0, general orders 3.8, 4.1, and 24.9.1.0, and article X, paragraph B of its rules and regulations and it terminated plaintiff's employment effective March 16, 2015.

¶ 31    On July 1, 2019, plaintiff filed a complaint for administrative review in the circuit court on the basis that (1) the decision was void due to the unlawful composition of the Merit Board, (2) the factual findings were against the manifest weight of the evidence, and (3) the sanction of termination was arbitrary and unreasonable.

¶ 32    On February 2, 2022, the circuit court entered judgment in plaintiff's favor. The court found that at the time of the hearing, the Merit Board was illegally constituted under section 3-

7002 of the Counties Code then in effect and lacked the statutory authority to consider the disciplinary charges against plaintiff, thereby rendering its termination order void.

¶ 33    On January 26, 2023, the court ordered that plaintiff be reinstated to his position effective January 27, 2023, with restoration of his seniority and benefits. The court awarded plaintiff $256,598.44, representing lost wages. Defendant appeals.

¶ 34    In an administrative review case, we review the decision of the administrative agency instead of the decision of the circuit court. *Lopez v. Dart*, 2018 IL App (1st) 170733, ¶ 67. Review of an administrative agency's decision is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq*. (West 2022)). We employ a two-step process when reviewing an agency's decision to terminate an employee. *Marzano v. Cook County Sheriff's Merit Board*, 396 Ill. App. 3d 442, 446 (2009). First, we decide whether the agency's findings of fact are against the manifest weight of the evidence (*id.*), meaning that the opposite conclusion is clearly evident. *Lopez*, 2018 IL App (1st) 170733, ¶ 70. Second, we determine whether the agency's factual findings are a sufficient basis to conclude that cause for discharge exists. *Marzano*, 396 Ill. App. 3d at 446. Cause is defined as a substantial shortcoming rendering the employee's continuance in his employment as detrimental to discipline and efficiency and something that the law and public opinion recognize as good reason for discharge. *Id.* The test is whether the finding of cause is arbitrary and unreasonable or unrelated to the requirements of the service. *Id.*

¶ 35    As a preliminary matter here, though, defendant argues that the circuit court erred in determining that (1) the Merit Board was illegally constituted under section 3-7002 of the Counties Code in effect at the time of the hearing in this case, and (2) that the Merit Board therefore lacked the statutory authority to consider the disciplinary charges against plaintiff, rendering the subsequent termination order void. We consider this argument first because if the Merit Board's

order was void, then we need not address whether the factual findings were against the manifest weight of the evidence and whether the sanction of termination was arbitrary and unreasonable. Our review of the order finding that the Merit Board was illegally constituted raises a question of law that we review *de novo*. See *Porter v. City of Chicago*, 393 Ill. App. 3d 855, 858 (2009).

¶ 36    Defendant argues that the circuit court's order was erroneous because the *de facto* officer doctrine should have precluded its review of the composition of the Merit Board. The *de facto* officer doctrine is a common law equitable doctrine conferring validity on acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment to office is deficient. *Griffin v. Cook County*, 2023 IL App (1st) 221376, ¶ 35. Under the doctrine, a person who actually performs the duties of an office under color of title is considered to be an officer *de facto*, and any substantive actions he has taken are valid so far as the public is concerned. *Id.* The doctrine is not meant to preclude a challenge to agency authority before any substantive action has been taken. *Id.* ¶ 36. As long as the person making a challenge does so before the administrative body has taken substantive action, the *de facto* officer doctrine does not bar that challenge. *Id.* Once the administrative body has taken substantive action, though, the *de facto* officer doctrine bars any challenge to the agency's authority. *Id.*

¶ 37    Defendant here argues that the *de facto* officer doctrine bars plaintiff's challenge to the Merit Board's composition because plaintiff made the challenge only after the Merit Board had taken substantive action on the disciplinary complaint by conducting an evidentiary hearing. *Griffin* is dispositive on defendant's argument regarding application of the *de facto* officer doctrine. In *Griffin*, disciplinary hearings were commenced against plaintiffs (two correctional officers) about eight months after *Taylor I* held that the Merit Board was illegally constituted. *Id.* ¶ 47. In spite of *Taylor I*, plaintiffs appeared for their disciplinary hearings before the illegally

constituted Merit Board and offered evidence and arguments, all without challenging the Merit Board's authority until after the conclusion of the hearings. *Id.* Ultimately, the Merit Board ordered plaintiffs' terminations. *Id.* ¶ 10.

¶ 38    On appeal, we were presented with "the conundrum of determining what constitutes 'substantive action'" for purposes of the *de facto* officer doctrine where plaintiffs waited until after disciplinary hearings had been completed, but before final judgments were entered, to challenge the legality of the Merit Board's composition. *Id.* ¶ 37. Defendants argued that the *de facto* officer doctrine barred plaintiffs' challenge because it was not made until after the Merit Board took substantive action by ruling on evidentiary objections at plaintiffs' termination hearings. *Id.* Plaintiffs countered that substantive action amounted to a final order or judgment, and that since they challenged the Merit Board's composition prior to the final judgments on the disciplinary proceedings, the *de facto* officer doctrine did not bar their challenge. *Id.*

¶ 39    After considering relevant case law, we held that "substantive action can be something less than a final administrative decision. *** [C]ommencing a hearing generally and allowing both sides to present all of the evidence is the *** significant factor here that constitutes substantive action sufficient to trigger the *de facto* officer doctrine." *Id.* ¶ 42. We noted:

> "It would be illogical, chaotic, and wasteful if litigants could, without objection, submit to the Merit Board's authority insofar as its ability to commence a hearing, place witnesses under oath, hear evidence and arguments, and rule on evidentiary objections and then challenge the Merit Board's authority only once they have had an opportunity to see which way the winds were blowing." *Id.* ¶ 44.

¶ 40 As the plaintiffs in *Griffin* did not challenge the Merit Board's legal authority until after it already had taken substantive action by commencing and completing the disciplinary hearings, the *de facto* officer doctrine barred their challenge to the Merit Board's authority. *Id.* ¶ 47.

¶ 41 In the instant case, plaintiff filed a discovery disclosure in 2015 indicating that he "may present" a defense that the Merit Board's "jurisdiction over this matter is improper." However, plaintiff never actually raised such an argument until after the conclusion of the disciplinary hearing, when he filed the motion to dismiss based on the allegedly illegal composition of the Merit Board under *Taylor II*. *Griffin* compels us to conclude that the *de facto* officer doctrine bars plaintiff's challenge to the Merit Board's authority. Plaintiff's challenge was untimely as it was made only after the Merit Board already had taken substantive action by commencing and completing the disciplinary hearing. Accordingly, we reverse the circuit court's order sustaining plaintiff's challenge to the Merit Board's authority.

¶ 42 Because the circuit court's judgment turned on its finding that the Merit Board acted outside its authority, the circuit court never addressed the allegations in plaintiff's complaint challenging the Merit Board's factual findings and its decision to terminate him. Plaintiff therefore was deprived of his ability to obtain circuit court review of those issues under the Administrative Review Law. The proper recourse is to remand to the circuit court for consideration of the remaining issues raised in plaintiff's complaint that have not yet been addressed. See *City of Chicago v. Pooh Bah Enterprises*, 224 Ill. 2d 390, 449 (2006).

¶ 43 For all the foregoing reasons, we reverse the circuit court's judgment and remand this matter to the circuit court for further proceedings consistent with this order.

¶ 44 Reversed and remanded.